IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH    CENTRAL DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, <br><br>                         **Plaintiff,** <br><br><br>     **vs.** <br><br><br><br> **JEFFREY L. MOWEN, THOMAS R. FRY, BEVAN J. WILDE, GARY W. HANSEN, MICHAEL G. BUTCHER, JAMES B. MOORING, DAVID G. BARTHOLOMEW, AND MICHAEL W. AVERETT,** <br><br>                   **Defendants,** <br><br> **ERIN O'MALLEY f/k/a ERIN O. MOWEN,** <br>                 **Relief Defendant.** | **MEMORANDUM DECISION AND ORDER** <br><br><br> **Case No. 2:09-CV-00786-DB** |

Before the court are the following motions: Plaintiff's Motion for Entry of Final Judgment Against Thomas R. Fry, Bevan J. Wilde, Gary W. Hansen, Michael G. Butcher, James B. Mooring, and Michael W. Averett (Dkt. No. 132) ("Motion for Entry of Final Judgment"); Plaintiff's Motion for Summary Judgment Against David Bartholomew (Dkt. No. 115) ("Plaintiff's Motion for Summary Judgment"); and David Bartholomew's Motion to Strike. (Dkt. No. 140.)  The court heard oral argument on May 10, 2012.

At oral argument, the court granted David Bartholomew's Motion to Strike as to the

language, "for which he is subject to a criminal action" from Statement of Fact No. 42 in

Plaintiff's Motion for Summary Judgment.  The court took Plaintiff's Motion for Entry of Final

Judgment and Plaintiff's Motion for Summary Judgment under advisement.  The court now

issues the following Memorandum Decision and Order.

PLAINTIFF'S MOTION FOR ENTRY OF FINAL JUDGMENT

Plaintiff moves the court for final judgment against Thomas R. Fry ("Fry"), Bevan J.

Wilde ("Wilde"), Gary W. Hansen ("Hansen"), Michael G. Butcher ("Butcher"), James B.

Mooring ("Mooring"), and Michael W. Averett ("Averett") (collectively "Final Judgment

Defendants").  Plaintiff seeks an order directing the Final Judgment Defendants to disgorge ill-

gotten gains, including prejudgment interest, and directing each to pay civil penalties as

authorized by Section 20(d) of the Securities Act of 1933 ("Securities Act") and Section

21(d)(3) of the Securities Exchange Act of 1934 ("Exchange Act").  Previously, pursuant to

stipulation, the court entered permanent injunctions against the Final Judgment Defendants.

(Dkt. Nos. 120, 80, 96, 127, 122, and 123.)  In consenting to the judgments, each defendant

agreed that for purposes of determining the amounts of disgorgement and civil penalties, they

would not contest the allegations in the Securities and Exchange Commission ("Commission")'s

Complaint, which the court accepts as true for purposes of this motion.  Accordingly, the court

orders the following disgorgement amounts and civil penalties against the Final Judgment

Defendants.

I.  Defendant Thomas R. Fry

  The court orders Fry to disgorge $16,751,439.94 and pay a third-tier civil penalty of $250,000.  The court declines to make Fry jointly and severally liable with Defendant Jeffrey Mowen.

II.  Defendant Bevan J. Wilde

  The court orders Wilde to disgorge $1,326,241.77 and pay a third-tier civil penalty of $130,000.  The court declines to make Wilde jointly and severally liable with Fry.

III.  Defendant James B. Mooring

  The court orders Mooring to disgorge $505,521.84 and pay a third-tier civil penalty of $130,000.  The court declines to make Mooring jointly and severally liable with Fry.

IV.  Defendant Michael W. Averett

  The court orders Averett to disgorge $774,936.02 and pay a third-tier civil penalty of $130,000.  The court declines to make Averett jointly and severally liable with Fry.

V.  Defendant Gary W. Hansen

  The court orders Hansen to disgorge $349,481.33 and pay a third-tier civil penalty of $130,000.  The disgorgement amount and penalty will be paid over a period of six years.

VI.  Defendant Michael G. Butcher

  The court orders Butcher to disgorge $201,278.11 and pay a third-tier civil penalty of $130,000.  The disgorgement amount and penalty will be paid over a period of six years.

PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Plaintiff moves this court pursuant Fed. R. Civ. P.56(a) and DU CivR 56-1 for summary judgment against David G. Bartholomew ("Bartholomew") on all counts of Plaintiff's Complaint. (Dkt. No. 115.) Plaintiff asserts that this court should find that Bartholomew violated: (1) Section 5 of the Securities Act by selling unregistered securities; (2) Section 15(a) of the Exchange Act by selling securities without being a registered broker-dealer; and (3) Section 17(a) of the Securities Act, Section 10(b) of the Exchange Act, and Rule 10b-5 by making material misrepresentations and omissions in the sale of the securities.

## I. Summary Judgment Standard

Summary judgment is proper if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Celotex Corp. V. Catrett, 477 U.S. 317, 322 (1986); see also Fed. R. Civ. P. 56. Rule 56(c) requires a party opposing summary judgment to designate specific facts showing that there is a genuine issue for trial. Celotex, 477 U.S. at 324. Thus, the opposing party must present affirmative evidence in order to defeat a properly supported motion for summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986).

## II. The Sale of Unregistered Securities

Plaintiff argues that there is no genuine issue as to any material fact regarding whether Bartholomew violated Section 5 of the Securities Act by selling unregistered securities. The court agrees.

Sections 5(a) and 5(c) of the Securities Act prohibit persons from selling or offering to sell a security unless a registration statement is in effect or has been filed as to the security

offering or there is an applicable exemption from registration. 15 U.S.C. §§ 77e(a) and (c). A

prima facie violation of Section 5 is shown by: (1) no registration statement was in effect or had

been filed as to the securities offering; (2) the defendant, directly or indirectly, sold or offered to

sell the securities; and (3) the offer or sale was made through the use of interstate facilities or

the mails. SEC v. Continental Tobacco Co. Of S.C., Inc., 463 F.2d 137, 155 (1972).

The first element is satisfied as Bartholomew admits "that [he] neither registered the

promissory notes nor is [he] aware of any such registration that occurred." (Dkt. No. 116-5,

Response to RFA #1.) Furthermore, after a diligent search of its records and files, the

Commission found no registration statement for LOA Capital LLC ("LOA") during the period

January 1, 2007 through July 31, 2008. (Dkt. No. 116-6, Attestation of Commission.)

The second element requires an analysis of the meaning of the term "security." Section

2(a)(1) of the Securities Act and Section 3(a)(1) of the Exchange Act define security to include

"any note." 15 U.S.C. § 77b(a)(1) and § 78c(a)(1). In Reves v. Ernst & Young, 494 U.S. 56

(1990), the Supreme Court declared that every note is presumed to be a security unless it bears a

strong resemblance to a judicially-created list of non-security instruments or it is determined

that the note is of a type that should be added to the list. 494 U.S. 56 at 65, 67. The judicially-

created list of non-security instruments does not include promissory notes. Nor are the

promissory notes at issue the type of instrument that should be added to the list.[1] Thus, the

_____

[1]The promissory notes at issue in this case should not be added to the list because (1) the
seller's purpose was to raise money for a business enterprise and the buyer's purpose was to
make a profit; (2) the note was offered and sold to a broad segment of the public; (3) the
investing public reasonably viewed the promissory notes as investment securities based upon the
terms of the notes and the fact that Bartholomew's offering materials clearly and repeatedly
identified the notes as "securities" and the purchasers as "investors;" (4) there are no risk-
reducing factors. See Reves v. Ernst & Young, 494 U.S. 56 (1990).

promissory notes at issue are considered securities.

Lastly, the third element is satisfied as Bartholomew used the mails to offer and sell securities as he  "mailed" and sent PPMs "overnight."  (Dkt. No. 116-4.)  He also used the telephone, an instrumentality of interstate commerce, in offering the promissory notes.  (Dkt. No. 116-2 at 44:10-18.)

These undisputed facts establish a prima facie case that Bartholomew violated Section 5. Once a prima facie case is established, the defendant has the burden of proving that a valid exemption from registration existed.  SEC v. Ralston Purina, 346 U.S. 119, 126 (1953); SEC v. Continental Tobacco Co. of S.C., 463 F.2d 137, 156 (5th Cir. 1972).  Any claimed exemption is strictly construed against the claimant.  SEC v. Murphy, 626 F.2d 633, 645 (9th Cir. 1980); Quinn & Co. v. SEC, 452 F.2d 943, 946 (10th Cir. 1971).

In the case at bar, Bartholomew argues that the securities he sold were exempt from registration under Rule 506 of Regulation D, 17 C.F.R. §203.506, and Section 4(2) of the Securities Act, 15 U.S.C. § 77d(2).  The court disagrees.  Bartholomew fails to qualify for the exemption under Rule 506 because he failed to comply with the disclosure requirements of Rule 502(b)(2) and Bartholomew fails to qualify for an exemption under Section 4(2) because his investors were not sufficiently sophisticated so as not to need the protection of a registration statement.  Accordingly, Bartholomew has failed to meet his burden and Plaintiff is entitled to judgment as a matter of law that Bartholomew violated Section 5 of the Securities Act by selling unregistered securities.

III.  Unregistered Broker-Dealer

Plaintiff also argues that there is no genuine issue as to any material fact regarding whether Bartholomew violated Section 15(a) of the Exchange Act by acting as an unregistered broker-dealer in connection with the offer and sale of securities.  The court agrees.

Section 15(a) makes it unlawful for any broker or dealer to make use of the mails or any means or instrumentality of interstate commerce to effect any transactions in, or to induce or attempt to induce the purchase or sale of, any security unless: (1) such broker or dealer is registered with the Commission; (2) in the case of a natural person, is an associated person of a registered broker-dealer; or (3) satisfies the conditions of an exemption or safe harbor.  15 U.S.C. § 78(o)(a).  Section 3(a)(4)(A) of the Exchange Act generally defines "broker" to include "any person engaged in the business of effecting transactions in securities for the account of others."  15 U.S.C. § 78(c)(a)(4)(A).

To establish that someone is acting as an unregistered broker-dealer, courts ask whether the individual regularly participates in securities transactions at key points in the chain of distribution.  SEC v. Martino, 255 F.Supp. 2d 268, 283 (S.D.N.Y. 2003).  In conducting this analysis, courts have considered several factors, including regular participation in securities transactions, employment by the issuer, payment by commission, a history of selling the securities of other issuers, involvement in advice to investors, and an active recruitment of investors.  Id.  There is no scienter requirement to establish a violation of Section 15(a).  Id.

In the case at bar, Bartholomew acted as an unregistered broker-dealer . Although Bartholomew was not registered with the Commission, he personally and actively solicited[2] investors for LOA's securities offerings and provided investment advice. (See Dkt. No. 116-2; Dkt. No. 116-7 at ¶ 3-4, 7; Dkt. No. 116-8 at ¶ 4.)  Bartholomew was the Manager of LOA and received transaction-based compensation.[3]  Bartholomew regularly participated in securities transactions.  Bartholomew associated with registered broker-dealers in the past and thus has a history of selling securities of other issuers. (Dkt. No. 116-2 at 200:8-18.)  Bartholomew sold securities of another issuer, New Century Funding, during the LOA offering. (Dkt. No. 82-1.) Lastly, Bartholomew does not satisfy the conditions of any exemption or safe harbor because he received compensation that was tied to the amount of capital he raised through his securities transactions. (Memorandum in Opposition to Plaintiff's Motion for Summary Judgment, Response to SOF #36.)  Accordingly, Plaintiff is entitled to judgment as a matter of law that Bartholomew violated Section 15(a) of the Exchange Act by acting as an unregistered broker-dealer in connection with the offer and sale of securities.

IV.  Fraudulent Sales

Plaintiff argues that there is no genuine issue as to any material fact regarding whether Bartholomew violated Section 17(a) of the Securities Act, Section 10(b) of the Exchange Act, and Rule 10b-5 by making oral representations to investors about the safety of the purported

---

[2]As with the Section 5 claim, Bartholomew's use of the mails and telephone establish his use of interstate commerce.

[3]Bartholomew received interest differentials that were tied to the principal amount of the securities he sold.  Accordingly, the receipt of these interest differentials constitutes transaction-based compensation because the amount of compensation was directly correlated to Bartholomew's success in selling the securities.

investment and/or making written representations regarding his due diligence effort and his use of investor funds.  The court disagrees.

A violation of Section 10(b) of the Exchange Act and Rule 10b-5 may be shown by (1) a misstatement or omission of a material fact; (2) made with scienter; (3) in connection with the purchase or sale of securities.  15 U.S.C. § 78j(b), 17 C.F.R. § 240.10b-5.  Similarly, Section 17(a)(2) of the Securities Act prohibits material misrepresentations in the offer or sale of a security, however, it does not require scienter.  Aaron v. SEC, 446 U.S. 680, 701-02 (1980).  A misrepresentation or omission is material if there is a substantial likelihood that a reasonable investor would consider it important in making an investment decision.  Basic Inc. V. Levinson, 485 U.S. 224, 231-32 (1988).   In the case at bar, the court finds genuine issues of material fact going to both materiality and scienter.  Accordingly, the court denies Plaintiff's summary judgment motion as to the fraudulent sales claim.

### CONCLUSION

As described above, the court enters final judgment as to Fry, Wilde, Mooring, Averett, Hansen, and Butcher.  Furthermore, for the reasons stated above, the court grants summary judgment against Bartholomew as to the sale of unregistered securities and as to acting as an unregistered broker-dealer in connection with the offer and sale of securities.  The court denies summary judgment against Bartholomew as to the fraudulent sales claim.

Dated this 11th day of June, 2012.

By _____
Dee Benson
United States District Judge

9